UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 11-2694-Bandstra

UNITED STATES OF AMERICA

vs.

CRISANTO DIEGO TREJOS-ORTIZ, et. al.,

**Defendants.**
_____/

### CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _/s/ Anthony W. Lacosta_____
ANTHONY W. LACOSTA
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No./Court No. A5500698
99 N. E. 4th Street
Miami, Florida   33132-2111
TEL (305) 961-9280
FAX (305) 536-0392
Email: anthony.lacosta@usdoj.gov

United States District Court

SOUTHERN **DISTRICT OF** FLORIDA

UNITED STATES OF AMERICA

V.

CRISANTO DIEGO TREJOS-ORTIZ, et. al.,

**CRIMINAL COMPLAINT**

CASE NUMBER: 11-2694-Bandstra

I, JASON STANKIEWICZ, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief:

From in or around October 2009, through on or about May 28, 2011, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, CRISANTO DIEGO TREJOS-ORTIZ, ANDRES CAMPO, and CARLOS RIOS did knowingly engage in the business of dealing in firearms without a license, or in the course of such business, shipped or transported a firearm in interstate or foreign commerce, in violation of Title 18, United States Code, Sections 922(a)(1)(A)) and 2.

From in or around October 2009, through on or about May 28, 2011, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, CRISANTO DIEGO TREJOS-ORTIZ, ANDRES CAMPO, and CARLOS RIOS, knowingly exported or sent from the United States, merchandise, articles, or objects, that is, firearms, contrary to any law or regulation of the United States, in violation of Title 18, United States Code, Section 554.

From in or around October 2009, through on or about May 28, 2011, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, CRISANTO DIEGO TREJOS-ORTIZ, ANDRES CAMPO, and CARLOS RIOS, did knowing and willfully conspire with each other and other known and unknown persons: (1) to engage in the business of dealing in firearms without a license, or in the course of such business ship a firearm in foreign commerce, in violation of Title 18, United States Code, Section 922(a)(1)(A); and knowingly exported or sent from the United States, merchandise, articles, or objects, that is, firearms, contrary to any law or regulation of the United States, in violation of Title 18, United States Code, Section 554; all in violation of Title 18, United States Code, Section 371.

I further state that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, & Explosives and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

JASON STANKIEWICZ
ATF, SPECIAL AGENT

Sworn to before me, and subscribed in my presence,

May 29, 2011                    at          Miami, Florida
Date                                         City and State

TED E. BANDSTRA
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer            Signature of Judicial Officer

## AFFIDAVIT

I, Jason Stankiewicz, Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives (hereinafter "ATF") Miami, Florida, being duly sworn, depose and say:

1.      I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") and have been so employed for six years. Prior to being an ATF agent, I was a uniformed Police Officer for the United States Secret Service for one year. I am currently assigned to the Miami Field Division, ATF/STOP HIDTA Task Force. My responsibilities as a Special Agent include, among other things, conducting investigations involving violations of Title 18, United States Code. As a Special Agent, I have participated in numerous investigations, including but not limited to, violations of federal firearms laws, federal explosives laws, arson laws, alcohol and tobacco diversion laws, as well as narcotics violations, and more specifically firearms trafficking investigations. In regard to firearms trafficking, I have received training on the methods used by firearms traffickers to sell weapons without a license and sell those weapons covertly. In addition, through the investigation in which I have participated, I have become further familiar with the paperwork generated during firearms transactions, with methods used to circumvent restrictions on purchasing or selling firearms for prohibited persons, and also methods used by illegal firearms trafficking organizations to obtain, store, and ship firearms while avoiding detection by law enforcement. I have received training at the Federal Law Enforcement Training Center ("FLETC") in all of the above violations, among other things.

2.      The information in this affidavit is based upon facts known personally to me, or information provided to me by other law enforcement officers. The purpose of this affidavit is to establish probable cause to obtain an arrest warrant for ANDRES CAMPO, CARLOS RIOS, and CRISANTO DIEGO TREJOS-ORTIZ. Because this affidavit is provided for this limited purpose, this affidavit does not contain every fact known to me or other law enforcement officers about this investigation.

### October 2009 to May 24, 2011.

3.      Florida Armory Inc. is a federally licensed firearms dealer that is located in Miami-Dade County, Florida. As a federally licensed dealer, Florida Armory Inc. is required to have customers complete an ATF Form 4473 in connection with each firearms purchase. Florida Armory Inc. is also required to maintain that form as part of its business records.

4.      Review of the paperwork from Florida Armory Inc. reveals that Michael Romero made a firearms purchase from that store on October 27, 2009. Michael Romero purchased a FN Five-Seven semi-automatic pistol and a DPMS AR-15 receiver.[1] On question 11a of the ATF Form 4473 that is associated with that sale, Romero indicated on the ATF Form 4473 that he (Romero)

---

[1] A lower receiver is a firearms as defined by Title 18, United States Code, Section 921(a)(3)(B).

1

was the actual purchaser of the two firearms in question. The serial number of the purchased Five Seven was F134446K and the serial number of the AR-15 receiver was F134446K.

5.    On October 30, 2009, ATF Special Agent Timothy Trenschel was at the Florida Gun Exchange[2] on an unrelated matter. While at the gun store, SA Trenschel was informed that Romero was purchasing seven (7) Rock River lower receivers for AR-15 type weapons. SA Trenschel was informed that Romero had represented the he (Romero) was a college student from Miami-Dade County Florida and that the purchase seemed suspicious because Romero didn't seem to know much about firearms. Purchasing seven receivers for the same gun is not consistent with acquiring firearms for personal use or a collection.

6.    SA Trenschel donned a work shirt from the store, borrowed a I-phone to use as an improvised recording device, and posed as a store worker. SA Trenschel questioned Romero as he was completing the paperwork (including an ATF Form 4473), which Romero filled out in SA Trenschel's presence. On the Form 4473, Romero indicated on question 11a that he was the actual purchaser of the firearms. When SA Trenschel asked Romero how Romero was assembling the rifles, Romero indicated that he was actually purchasing the firearms at the request of his uncle, an FBI agent located in another state. Romero completed the transaction, paid cash for the firearms, and started to leave the store.

7.    Before Romero left the store, SA Trenschel stopped Romero and told him that he needed to answer some more questions about the purchase. Romero, SA Trenschel, and a Port Orange Police Officer went to the back room of the business, where SA Trenschel interviewed Romero (and another unrelated suspected straw purchaser). During the interview, Romero started to make statements that incriminated himself. SA Trenschel paused the interview and read Romero his Miranda rights using a *Miranda* card. Romero indicated that he understood his rights and waived his rights. After the waiver, Romero admitted that he was purchasing the firearms for another person (Erik Comesana). Romero said Comesana had provided him the money to buy the guns and that Comesana intended to transfer the guns to a third person named "Campos." Romero admitted that he had purchased guns for Comesana on other occasions, including an FN semi-automatic pistol from Florida Armory. Romero admitted that Comesana paid Romero hundreds of dollars to make these purchases on Comesana's behalf. Romero also admitted that he was not telling the truth when he indicated on question 11a of the Form 4473 that he (Romero) was the actual purchaser of the firearm.

8.    While Romero was inside Florida Gun Exchange, Comesana was waiting outside in a vehicle. Comesana was detained and interviewed inside the Florida Gun Exchange. In a post-*Miranda* statement, Comesana admitted to providing Romero money to make the firearms purchases discussed above and also other firearms purchases. Comesana stated that he and another partner were selling the purchased firearms to other persons for profit. Comesana recruited Romero to make

---

[2] The Florida Gun Exchange is a federally licensed firearms dealer located in Port Orange, Florida.

2

straw purchases because Comesana felt he was purchasing too many firearms himself in his own name. Comesana provided consent to search his vehicle outside the Florida Gun Exchange. When the vehicle was searched, SA Trenschel recovered Comesana's wallet, which included a receipt related to Romero's purchase of the FN Five Seven semi-automatic pistol and the AR-15 receiver from Florida Gun Exchange on October 27, 2009 (described in paragraph 4 above).

9. On March 24, 2011, and March 25, 2011, Michael Romero and Erik Comesana were arrested based upon a Complaint. Both men were subsequently indicted for making false statements to firearms dealers, trafficking in firearms, and conspiracy. Romero has pleaded guilty and is pending sentencing.

10. On Friday, May 27, 2011, Comesana indicated that he would plead guilty and the Court docketing system indicated that he would enter a change-of-plea on June 1, 2011. Comesana was murdered on May 27, 2011.

### Information from Cooperating Witness One (CW-1)

11. On May 28, 2011, ATF investigators were notified by Miami Dade Homicide about the discovery of Comesana's body.

12. On May 28, 2011, CW-1 was interviewed by investigators. CW-1 admitted being a member of an arms trafficking organization in which Michael Romero, Erik Comesana, ANDRES CAMPO, CARLOS RIOS, DAVID LOAIZA, and CRISANTO DIEGO TREJOS-ORTIZ were members. During interviews, CW-1 admitted personally participating in the organization since in or around 2008 and continuing that participation until May 27, 2011. CW-1's knowledge of the organizations activities is based upon CW-1's personal participation in the conspiracy.

13. According to CW-1, the way the conspiracy works is that the group would purchase firearms and firearms parts from gun dealers. The group would then gather various purchases at certain locations. The firearms were taken apart using tools at these locations and then concealed inside shipping boxes which would be sent to narcotics trafficking organizations in Colombia. CW-1 said his/her role was to pick up purchased items from certain locations and deliver those items to certain locations and/or certain people. CW-1 also assisted taking guns apart and packaging guns for shipment, concealing them inside of boxes of chairs and other items, which would then be shipped to Colombia by Avianca Express, a common carrier. CW-1 admits being paid $1000 a week for his role in the conspiracy.

14. CW-1 admitted delivering firearms and/or firearms parts to two locations. The first location was a warehouse located in Miami-Dade County. As part of the homicide investigation, state investigators searched that warehouse on May 28, 2011. During that search, investigators discovered, among other items, AR-15 sight systems, soft white clear plastic (which can be used for packaging), a power drill (which can be used to dissemble firearms or erase serial numbers), and a yellow saw horse. Blood, machetes, and shell casings were also recovered from the warehouse,

which state investigators believe are related to Erik Comesana's murder.

15. The second location identified by CW-1 was a residence located in Miami-Dade County. According to CW-1, CW-1 had delivered contraband to this location in the past for storage, packaging and ultimately shipment to Colombia. CW-1 reported being at that residence as recently as May 21, 2011 (last Saturday). On that day, CW-1 reported that ANDRES CAMPO and DAVID LOAIZA, and other persons were at the location. CAMPO, LOAIZA and CW-1 broke down the receivers and additional parts and packaged those parts concealed in cardboard boxes for shipment to Colombia. CW-1 advised that RIOS wasn't present because he was temporarily in the hospital. While inside the garage, CW-1 helped package and conceal upper and lower firearms receivers to AR-15 rifles, firearm magazines, firearm grips, barrels, and flash suppressors. CW-1 stated that CW-1 saw many boxes containing disassembled firearms ready to ship to Colombia.

16. Using this information, investigators were able to obtain a federal search warrant to search the residence for evidence related to illegal arms trafficking and related crimes. The warrant was executed at that location during the early morning hours of May 29, 2011. During that search, investigators discovered tools, work horses, packaging materials, gloves, heat sealers, bubble wrap, and other items which could be used to disassemble and conceal firearms. Recovered items specific to firearms included two armorer wrenches, seven rounds of Winchester 9mm firearm ammunition, a box with the phrase, "Bushmaster collapsible stock box," bin with metal AR-15 buffers, and box of firearms slide bolts. Shipping documents listing Colombia as a destination country, with the sender identified as CARLOS RIOS, and listing non-firearms items was recovered. There were also handwritten notes providing packing instructions for disassemble parts, including an AR-15 buffer.

17. According to CW-1, CRISANTO DIEGO TREJOS-ORTIZ, a/k/a "Diego", is a leader/organizer in the arms shipment organization. TREJOS-ORTIZ provides currency, storage, shipping information, and logistical support to a known ANDRES CAMPO, a manager of the firearms trafficking organization. CW-1 has seen and heard TREJOS-ORTIZ giving instructions to CAMPO about what to do with the firearms and firearm parts.

18. According to CW-1, ANDRES CAMPO is a manager in the organization. CAMPO would provide CW-1 and other conspiracy members instructions on where to pick up firearms and firearms parts and where to deliver those items. CW-1 reports repeatedly being given those instructions by CAMPO over the last two year period. CAMPO would also take CW-1 to locations to buy supplies needed to breakdown, conceal and ship the firearms. CW-1 reported seeing CAMPO prepare boxes for shipment to Cali, Colombia and dropping those boxes to Avianca Express, which is a common carrier. CAMPO would provide CW-1 about $1000 cash a week for CW-1's work for the organization.

19. According to CW-1, DAVID LOAZIA would play a role in the organization similar to CW-1. In the beginning, around 2008, ANDRES CAMPO and LOAIZA were the person who trained CW-1 on how to break down the firearms (upper and lower AR-15 receivers) and conceal them in packaging materials. CW-1 knows that LOAZIA was sent to Colombia to pick up money

4

from customers in Colombia that has been purchases the firearms and equipment sent to Colombia. LOAZIA explained to CW-1 that he had to stay in Colombia longer than expected because the money all there.

20. According to CW-1, CARLOS RIOS is LOAZIA's nephew and plays a role in the organization similar to LOAZIA and CW-1. CW-1 says that RIOS's pickup truck is sometimes used to transport firearms and firearms parts between storage locations and to the shipping company.

### Information provided by Cooperating Witness Two (CW-2)

21. During the early morning hours of May 29, 2011, CW-2 was interviewed by investigators and provided information which corroborates information provided by CW-1.

22. CW-2 stated that CW-2 has observed CAMPO, TREJOS-ORTIZ, and RIOS at the second location described in **paragraph 15** above on multiple occassion. CW-2 stated these individuals rented the garage at that location, which was paid for by TREJOS-ORTIZ. After TREJOS-ORTIZ started renting the garage for $600 a month, in or around February 2011. CW-2 said TREOJOS-ORTIZ had put machinery in the garage and that CW-2 saw persons in addition to TREJOS-ORTIZ frequenting the garage on numerous occasions. When show driver license pictures, CW-2 identified RIOS's and CAMPO's DMV pictures as person frequenting the garage.

### Information provided by Cooperating Witness Three (CW-3).

23. On a separate occasion approximately two weeks ago, CW-3 observed LOAIZA, CAMPO and TREJOS-ORTIZ ("Diego") in the garage for the residence described above in **paragraph 15** utilizing a heat dryer to heat up packaging material to wrap the firearms up and place them in a "milk-crate" box.

### Records check

24. A records check revealed that CAMPO, TREJOS-ORTIZ, RIOS, and LOAIZA do not have a license to deal in firearms. International Carriers such as Avianca require that firearms be listed in paperwork if they are exported outside the country. CW-1 specifically remembers dropping off a package containing a BBQ Grill, with two lower receivers hidden inside, to Aviana Express approximately two months ago pursuant to instructions given to him by CAMPO. The package did not list that the receivers were inside and was destined for Cali, Colombia. The Aviana Express is located in Miami Dade County.

### Arrest of Loiza

24. On May 29, 2011, ATF agents arrested LOAIZA at Miami Dade Police Headquaters. Among LOAIZA's personal affects was his wallet, which included a receipt and credit card from Home Depot, in which purchases of some of the tools recovered from the second residence were

listed.  LOAIZA had made these purchases in May 2011.

25.  Based on the forgoing, I respectfully submit that there is probable cause to arrest ANDRES CAMPO, CARLOS RIOS, and CRISANTO DIEGO TREJOS-ORTIZ for dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1), shipping weapons though a common carrier without written notice, in violation of Title 18, United States Code, Section 922(e), exporting firearms without a license, in violation of Title 18, United States Code 554, and conspiracy to commit the aforementioned crimes, in violation of Title 18, United States Code, Section 371.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
JASON STANKIEWICZ, SPECIAL AGENT
BUREAU OF ALCOHOL, TOBACCO, FIREARMS, & EXPLOSIVES

Sworn and subscribed before me this
29th day of May, 2011.

_____
TED E. BANDSTRA
UNITED STATES MAGISTRATE JUDGE - SDFL

6